IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **TERRENCE WILLIAMS,** | |
| *Plaintiff,* | |
| **v.** | **Civil No. 1:25-cv-02726-JRR** |
| **ABERDEEN PROVING GROUND FEDERAL CREDIT UNION,** | |
| *Defendant.* | |

<u>**MEMORANDUM OPINION**</u>

Pending before the court are multiple motions and/or requests: Defendant Aberdeen Proving Ground Federal Credit Union's ("APGFCU" or "Defendant") Motion to Dismiss or for Summary Judgment at ECF No. 22 (the "Motion to Dismiss"), Plaintiff's Request for Leave to Amend at ECF No. 23 (the "Request to Amend"), and Plaintiff's Motion for Leave to File Surreply at ECF No. 27 (the "Surreply Motion").[1]   The court has reviewed all papers; no hearing is necessary.  Local Rule 105.6 (D. Md. 2025).  For the reasons that follow, by accompanying order, the Motion to Dismiss will be granted; Plaintiff's Request to Amend will be denied without prejudice and with leave to refile; and Plaintiff's Surreply Motion will denied.

---

[1] Also pending is Plaintiff's Motion to Strike Affidavits of Robyn Mannone at ECF No. 34 (the "Motion to Strike") in which Plaintiff moves to strike the affidavits offered by Ms. Mannone in support of Defendant's Motion to Dismiss and Defendant's opposition to Surreply Motion.  Because the court does not consider the Mannone Affidavit in ruling on either Motion, the Motion to Strike will be denied as moot.  Even were the Motion to Strike not moot, however, it would nonetheless be denied; Plaintiff's argument amounts to an evidentiary challenge sounding in, among other things, credibility—which is the province of the factfinder.  *See United States v. Contreras-Avalos*, 139 F.4th 314, 329 (4th Cir.), *cert. denied,* 146 S. Ct. 315 (2025), and *cert. denied sub nom. Jacome v. United States*, 146 S. Ct. 903 (2025) ("Both witness credibility and the weighing of conflicting evidence are quintessential matters for the finder of fact, not the reviewing court, to decide.") (citation omitted).

## I.     <u>BACKGROUND</u>[2]

On or about October 25, 2021, Plaintiff deposited a check for $4,300 from his Citibank checking account into his APGFCU checking account (the "Citibank check").  (ECF No. 20 ¶ 8.) An APGFCU representative confirmed to Plaintiff that the Citibank check "had cleared," but APGFCU later stated the Citibank check had not in fact cleared.  *Id.* ¶¶ 10–12.  Relying on confirmation of the funds, Plaintiff used the deposited money from the Citibank check "for ordinary personal and financial needs."  *Id.* ¶ 11.  When the Citibank check did not clear, "APGFCU subsequently charged off the resulting overdraft balance, reporting it as a $2,559 debt."[3]  *Id.* ¶ 14.  APGFCU then furnished information about the charged-off account to credit reporting agencies.  *Id.* ¶ 15.  Plaintiff first became aware of the resultant credit damage on or about July 25, 2022.  *Id.* ¶ 16.

While Plaintiff does not contend the charge off was reported in error, he alleges that Defendant's credit reporting contained "fundamental inaccuracies and internal contradictions" in that it reported a date of first delinquency of December 20, 2021, while simultaneously showing that his payments from December 2021 to April 2022 were "Paid on Time."  (ECF No. 20 ¶¶ 18–19.)  And further, Defendant did not report the account as charged off until May 2022.  *Id.* ¶ 20. *See also* Consumer Credit Reports, ECF No. 1-1.  Defendant's reporting "shows no progression of delinquency."  (ECF No. 20 ¶ 22–24.)  Plaintiff obtained his credit reports from the three major credit reporting agencies ("CRAs") in August 2024 all of which reflected the "contradictory

---

[2] In ruling on the instant Motion, the court accepts as true all well-pled facts set forth in the Amended Complaint (ECF No. 20).  *See Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).

[3] A charge off (or charge-off) is an accounting or bookkeeping term generally referring to an unpaid debt written off by a creditor as a loss; it does not refer to or imply debt forgiveness.  As the Western District of North Carolina has recently explained: "A 'charge-off' occurs when a creditor determines, after several months of missed payments, that a debt is unlikely to be collected and writes off the unpaid balance as a loss; such charge-offs may negatively impact a consumer's credit score and can remain on a credit report for up to seven years."  *Hammond v. Bank of Am. Na*, No. 23-CV-00809-TMR-DCK, 2026 WL 1557728, at *2 (W.D.N.C. June 2, 2026) (citing material from TransUnion and Experian websites).

payment history." *Id.* ¶¶ 26–29.  The CRA reports reflect that information had been provided as recently as July 31, 2024.  *Id.*  That same month, Plaintiff submitted disputes to the CRAs regarding the inaccuracy, and the CRAs subsequently deleted the APGFCU tradeline from his credit reports. *Id.* ¶¶ 32–34.  Because CRAs "do not delete tradelines without" investigation and notification to the furnisher, Plaintiff alleges Defendant was notified of his disputes.  *Id.* ¶¶ 36–37.[4]

At some point thereafter, likely in "October or November 2024," Defendant "re-inserted or re-furnished the previously deleted tradeline to the [CRAs]."  (ECF No. 20 ¶ 38.)  Plaintiff learned of this when he obtained his credit reports from the CRAs on December 19, 2024.  *Id.* ¶ 45.  The reports again included the APGFCU tradeline with "the same internal contradiction" discussed above.  *Id.* ¶¶ 46–50.  APGFCU last updated the purportedly inaccurate information to the CRAs on November 30, 2024.  *Id.* ¶¶ 47–48.  Plaintiff subsequently disputed the accuracy of the information to Defendant on two occasions—to an APGFCU representative at its branch location in Edgewood, Maryland, in or around February 2025, and to an APGFCU representative on the telephone in or around May 2025.  *Id.* ¶¶ 51–55.  Notwithstanding these disputes, the inaccurate reporting remained present on Plaintiff's credit reports he obtained on June 3, 2025.  *Id.* ¶ 58.  These reports show that APGFCU last provided the inaccurate information on April 30 and May 31, 2025.  *Id.* ¶ 60.  Plaintiff then submitted additional disputes to the CRAs.  *Id.* ¶ 64. Defendant "failed to conduct a reasonable investigation in response to Plaintiff's June 2025 disputes and failed to correct the inaccurate information."  *Id.* ¶ 65.  Defendant continues to furnish this inaccurate information to the CRAs.  *Id.* ¶¶ 69–70.

Plaintiff initiated the instant action on August 15, 2025.  (ECF No. 1.)  He brings four counts: Violation of the Fair Credit Reporting Act ("FCRA") (Count I); Defamation (Count II);

---

[4] A tradeline generally refers to a credit account listed on a credit report.

Negligence (Count III); and Violation of the Maryland Consumer Protection Act ("MCPA") (Count IV).  (ECF No. 20 ¶¶ 79–117.)   Plaintiff's claim under the FCRA includes alleged violations of 15 U.S.C. § 1681s-2(a) and § 1681s-2(b).  *Id.* ¶¶ 79–96.  Plaintiff asserts the following harm:

> a. Damage to his credit score and creditworthiness;
> b. Negative entries on his credit reports maintained by all three major credit bureaus;
> c. Difficulty obtaining credit, loans, and other financial products;
> d. Difficulty opening and maintaining bank accounts;
> e. Emotional distress, anxiety, and mental anguish from dealing with these issues repeatedly over many months;
> f. Lost time and effort in disputing the same inaccurate information multiple times through multiple channels;
> g. Damage to his reputation and financial standing;
> h. Lost financial opportunities.

*Id.* ¶ 76.   Plaintiff further alleges Defendant's actions were (and are) willful based on their continued inaccurate reporting despite multiple disputes as to the accuracy of, and internal inconsistencies in, the reports.  *Id.* ¶ 73.

Defendant filed the instant Motion to Dismiss on February 9, 2026.  (ECF No. 22.)  In his response in opposition, Plaintiff requests in the alternative leave to amend should the court find a pleading deficiency.  (ECF No. 23.)  Plaintiff then filed the Surreply Motion.  (ECF No. 27).  The court first considers Plaintiff's Surreply Motion before turning to Defendant's Motion to Dismiss and Plaintiff's Request to Amend.

## II.   **<u>SURREPLY MOTION</u>**

Plaintiff seeks leave to file a surreply to respond to "new arguments and positions" raised by Defendant in opposition.  (ECF No. 27 ¶ 3.)   In this court, surreplies are disfavored and generally not permitted.  *Bowers v. Legum & Norman Realty, Inc.*, 776 F. Supp. 3d 294, 303 n.1 (D. Md. 2025); Local Rule 105.2(a) (D. Md. 2025) ("Unless otherwise ordered by the Court,

surreply memoranda are not permitted to be filed."). Ultimately, whether to permit a surreply is within the court's discretion. *EEOC v. Freeman*, 961 F. Supp. 2d 783, 801 (D. Md. 2013), *aff'd in part sub nom.*, 778 F.3d 463 (4th Cir. 2015). "This discretion is typically used in the interest of fairness to permit parties to respond to new matters raised for the first time in the opposing parties' reply briefs." *Boland v. Amazon.com Sales, Inc.*, 628 F. Supp. 3d 595, 599 (D. Md. 2022) (citing *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004)). *See Freeman*, 961 F. Supp. 2d at 801 (explaining that "[s]urreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply") (citing *Khoury*, 268 F. Supp. 2d at 605 (D. Md. 2003)). Of import here, "[w]here 'the arguments made by Defendants in their reply brief are merely responses to new arguments made by Plaintiffs in their response,' a sur-reply is not appropriate." *Freeman*, 961 F. Supp. 2d at 801 (quoting *Aguilar v. LR Coin Laudromat,* 2012 WL 1569552, at *2–3 (D. Md. May 2, 2012)).

The court is not persuaded a surreply is warranted here. First, the arguments and evidence Plaintiff describes as "new" are not new; rather, they were raised (at length) by Defendant in its Motion to Dismiss, including its argument about the "favorable" inaccurate reporting, *see* ECF No. 22-1 at pp. 7–9, and the Mannone Affidavit attesting that Defendant did not receive notice of Plaintiff's disputes, *see* ECF No. 22-2 ¶¶ 11–13. That Plaintiff failed to respond to these arguments does not justify a surreply.[5] Additionally, Defendant's discussion in its reply regarding futility of amendment and response to Plaintiff's request for discovery merely answer arguments made by

---

[5] To the contrary, when a party fails to respond to an argument raised in a motion through a response in opposition to the motion, the party "concedes the point." *Stenlund v. Marriott Int'l, Inc.*, 172 F. Supp. 3d 874, 887 (D. Md. 2016); *see Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010) (noting that a plaintiff "abandon[s]" her claim where she fails to respond to argument).

Plaintiff in his response to the Motion to Dismiss, and similarly do not support a surreply.[6]  *See*

*Freeman*, 961 F. Supp. 2d at 801, *supra*.  Plaintiff's proposed surreply seeks to respond to

arguments he previously ignored and to assert new facts not part of the pleadings.  Neither provides

a proper basis for a surreply.[7]  The Surreply Motion will therefore be denied.

### III.    MOTION TO DISMISS—LEGAL STANDARD

#### A.  Federal Rule of Civil Procedure 12(b)(1)

Rule 12(b)(1) concerns dismissal for lack of subject matter jurisdiction.  FED. R. CIV. P.

12(b)(1).   Subject matter jurisdiction challenges may proceed in two ways: "either a facial

challenge, asserting that the allegations pleaded in the complaint are insufficient to establish

subject matter jurisdiction, or a factual challenge, asserting 'that the jurisdictional allegations of

the complaint [are] not true.'" *Mayor & City Council of Baltimore v. Trump*, 416 F. Supp. 3d 452,

479 (D. Md. 2019) (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)).  In a facial

challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if

the complaint alleges sufficient facts to invoke subject matter jurisdiction."  *Kerns*, 585 F.3d at

192; *see Ministry of Defence of State of Kuwait v. Naffa*, 105 F.4th 154, 159 (4th Cir. 2024) (same).

Conversely, in a factual challenge, "the presumption of truthfulness normally accorded a

complaint's allegations does not apply, and the district court is entitled to decide disputed issues

of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192.  "In that circumstance,

the court 'may regard the pleadings as mere evidence on the issue and may consider evidence

outside the pleadings without converting the proceeding to one for summary judgment.'"  *Trump*,

---

[6] Additionally, because the court declines to convert the Motion to Dismiss to one for summary judgment, the basis
for the Surreply Motion is moot as to the Rule 56(d) challenge and the affidavit.

[7] *See Mylan Lab'ys, Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991) (noting that "it is axiomatic that [a]
complaint may not be amended by the briefs in opposition to a motion to dismiss") (quoting *Car Carriers, Inc. v. Ford
Motor Co.,* 745 F.2d 1101 (7th Cir. 1984))

416 F. Supp. 3d at 479 (quoting *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004)).

"The plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of

the evidence." *United States ex rel. Fadlalla v. DynCorp Int'l LLC*, 402 F. Supp. 3d 162, 176 (D.

Md. 2019) (citing *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999)).

Where Defendant asserts a challenge to Plaintiff's Article III standing, it has raised a

jurisdictional challenge properly analyzed under Rule 12(b)(1).[8] *See Dreher v. Experian Info.

Sols., Inc.*, 856 F.3d 337, 343 (4th Cir. 2017) (recognizing that Article III standing "is a threshold

jurisdictional question" (citation omitted)). Defendant mounts a facial challenge to the court's

subject matter jurisdiction, arguing that Plaintiff's allegations are insufficient to establish Article

III standing. Accordingly, the court need not consider matters outside the pleadings in addressing

Defendant's Article III challenges, and the parties do not appear to ask the court to do so.

### B. Federal Rule of Civil Procedure 12(d)

Defendant brings its Motion as a motion to dismiss or, alternatively, for summary

judgment. "A motion with this caption implicates the court's discretion under Fed. R. Civ. P.

12(d)." *Hayes v. Maryland Transit Admin.*, 708 F. Supp. 3d 683, 688 (D. Md. 2023), *aff'd,* No.

24-1482, 2024 WL 4262786 (4th Cir. Sept. 23, 2024) (quoting *Snyder v. Md. Dep't of Transp.*,

No. CCB-21-930, 2022 WL 980395, at *4 (D. Md. Mar. 31, 2022)). Federal Rule of Civil

Procedure 12(d) provides: "[i]f, on a motion under Rule 12(b)(6) . . . matters outside the pleadings

are presented to and not excluded by the court, the motion must be treated as one for summary

judgment under Rule 56." FED. R. CIV. P. 12(d).

"A district judge has 'complete discretion to determine whether or not to accept the

submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6)

---

[8] Defendant omits (seemingly, erroneously) reference to Rule 12(b)(1) in its Motion to Dismiss.

motion and rely on it, thereby converting the motion, or to reject it or simply not consider it,'" and such discretion "should be exercised with great caution and attention to the parties' procedural rights." *Sammons v. McCarthy*, 606 F. Supp. 3d 165, 193 (D. Md. 2022) (quoting 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366 (3d ed. 2018)); *see Sol v. M&T Bank*, 713 F. Supp. 3d 89, 99–100 (D. Md. 2024) (same). "In general, courts are guided by whether consideration of extraneous material 'is likely to facilitate the disposition of the action,' and 'whether discovery prior to the utilization of the summary judgment procedure' is necessary." *Sammons*, 606 F. Supp. 3d at 193 (quoting 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366).

"There are two requirements for a proper Rule 12(d) conversion." *Greater Balt. Ctr. for Pregnancy Concerns. Inc. v. Mayor and City Council of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013). First, "all parties be given some indication by the court that it is treating the 12(b)(6) motion as a motion for summary judgment," which can occur "[w]hen a party is aware that material outside the pleadings is before the court." *Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore*, 721 F.3d 264, 281 (4th Cir. 2013) (quoting *Gay v. Wall,* 761 F.2d 175, 177 (4th Cir. 1985)). Where a movant expressly captions a motion as one for summary judgment "in the alternative," the non-movant is "on notice that this motion might be treated as one for summary judgment"; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). Second, customarily, the parties must first "be afforded a reasonable opportunity for discovery." *Gay*, 761 F.2d at 177.

"Generally, if a party believes that summary judgment is procedurally inappropriate because the party needs discovery to properly oppose the motion, the party should file a Rule 56(d)

affidavit informing the court of such." *Sol*, 713 F. Supp. 3d at 100 (citing *Sager v. Hous. Comm'n of Anne Arundel Cnty.*, 855 F. Supp. 2d 524, 542–43 (D. Md. 2012)).  That notwithstanding, the nonmovant may not "demand discovery for discovery's sake; a Rule 56(d) request is properly denied 'where the additional evidence sought . . . would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment.'"  *Gardner v. United States*, 184 F. Supp. 3d 175, 181–82 (D. Md. 2016) (quoting *Strag v. Bd. of Trs.*, 55 F.3d 943, 954 (4th Cir. 1995)).

Defendant here moves in the alternative for summary judgment pursuant to Rule 56 and asks the court to consider the affidavit of Robyn Mannone, Chief Consumer Lending Officer of APGFCU.  (ECF Nos. 22-2, 22-2.)  Discovery has not yet commenced in this action.  Plaintiff submits a Rule 56(d) affidavit (ECF No. 23-1), attesting that discovery is needed regarding, *inter alia*, Defendant's notice of the disputes at issue and its failure to conduct an adequate investigation. The court agrees that such discovery would tend to bear on material facts that may well, at a minimum, generate a triable issue hinging on witness credibility and Defendant's notice and, should claims survive dismissal, are "likely to facilitate the disposition of the action." *Sammons*, 606 F. Supp. 3d at 193, *supra*.  The court therefore declines to convert Defendant's Motion to Dismiss and will resolve it per the applicable Rule 12 standard.

### C.  Federal Rule of Civil Procedure 12(b)(6)

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint." *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017), *as amended* (Jan. 20, 2017) (quoting *Papasan v. Allain*, 478 U.S. 265, 283 (1986)).  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A court decides whether

this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that 'the defendant is liable for the misconduct alleged.'" *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (citing *Iqbal*, 556 U.S. at 678).

A plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level, thereby nudging its claims across the line from conceivable to plausible." *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 543 (4th Cir. 2013) (citation modified) (quoting *Twombly,* 550 U.S. at 555, 570). The plausibility requirement is not "a probability requirement but rather a mandate that a plaintiff 'demonstrate more than a sheer possibility that a defendant has acted unlawfully." *In re Birmingham*, 846 F.3d at 92 (quoting *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009)). Reliance on "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555.

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), a court usually does not consider evidence outside of the complaint. A court may consider documents attached to a motion to dismiss if the documents are "integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity." *Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.,* 190 F.3d 609, 618 (4th Cir. 1999)). "To be 'integral,' a document must be one 'that by its very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Wooten v. Univ. of Maryland, Baltimore*, 733 F. Supp. 3d 402, 415 (D. Md. 2024) (emphasis in original) (quoting *Chesapeake Bay Found. Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d. 602, 611 (D. Md. 2011)). While Defendant references the court's authority to consider integral exhibits, it does not argue,

10

and the court does not discern, that the Mannone Affidavit is integral to the Amended Complaint. The court therefore does not consider same in ruling on Defendant's Rule 12(b)(6) arguments.[9]

## IV.    ANALYSIS[10]

Defendant seeks dismissal of all claims. By way of reminder, Plaintiff brings four claims with multiple bases. Plaintiff's FCRA claim (Count I) is based on purported violations of 15 U.S.C. §§ 1681s-2(a), 1681s-2(a)(5)(B), 1681s-2(a)(8), and 1681s-2(b). (ECF No. 20 ¶¶ 79–96.) Plaintiff's defamation claim (Count II) is based on Defendant's alleged inaccurate and contradictory reporting of the payment and charge off dates and failure to adequately investigate and make corrections. *Id.* ¶¶ 102–107. Like his defamation claim, Plaintiff's negligence and MCPA claims (Counts III and IV, respectively) are similarly based on the inaccurate reporting of the payment and charge off dates and failure to adequately investigate and make corrections, as well as allegations that Defendant incorrectly told Plaintiff that his funds from the Citibank check had cleared when they had not. *Id.* ¶¶ 110–116. For clarity, accepting Plaintiff's allegations as true, Plaintiff does not dispute that his account with Defendant was delinquent, which resulted in a charge off; instead, his claims arise from inaccuracy of the report showing that his account was paid on time through April 2022 despite the date of first delinquency noted as December of 2021. *Id.* ¶¶ 8–25.[11]

---

[9] For these same reasons, Plaintiff's Motion to Strike will be denied as moot.

[10] This court is mindful of its obligation to construe liberally the pleadings of self-represented litigants. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "In practice, this liberal construction allows courts to recognize claims despite various formal deficiencies, such as incorrect labels or lack of cited legal authority." *Wall v. Rasnick*, 42 F.4th 214, 218 (4th Cir. 2022). Such liberal construction, however, does not absolve Plaintiff from pleading a plausible claim, and this court "may not act as an advocate for a self-represented litigant" by "conjur[ing] up" issues not presented. *Desgraviers v. PF-Frederick, LLC*, 501 F. Supp. 3d 348, 351 (D. Md. 2020) (first quoting *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314 (D. Md. 2014), *aff'd*, 584 F. App'x 135 (4th Cir. 2014); and then quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

[11] The court acknowledges that Plaintiff's proposed surreply, which the court does not consider, brings into question whether Plaintiff does in fact dispute the underlying debt. Regardless, where no allegations supporting such a challenge are set forth in the Amended Complaint, the court may not consider it.

The court turns first to Defendant's challenges to Plaintiff's FCRA claims, including that he lacks Article III standing to assert, and that Plaintiff may not pursue, an FCRA claim pursuant to 15 U.S.C. §1681s-2(a) as a matter of law. The court then considers Defendant's challenges to Plaintiff's Maryland state law claims, addressing first its arguments on preemption, and then its statute of limitations challenges, before concluding with assessment of the sufficiency of Plaintiff's pleadings.

### A. FCRA Claims

By way of background, "[t]he FCRA is a comprehensive statutory scheme designed to regulate the consumer reporting industry." *Ross v. F.D.I.C.*, 625 F.3d 808, 812 (4th Cir. 2010) (citing 15 U.S.C. § 1681(a)). Under the FCRA, furnishers are required "to ensure that the information they provide to consumer reporting agencies is accurate." *Roberts v. Carter-Young, Inc.*, 131 F.4th 241, 245 (4th Cir. 2025) (citing 15 U.S.C. § 1681s-2(a)). Where a consumer disputes the accuracy or completeness of the information in his credit report, he may dispute same "directly with the furnisher," or "indirectly by notifying a consumer reporting agency rather than the furnisher." *Id.* (first citing 15 U.S.C. § 1681s-2(a)(8); and then citing 15 U.S.C. §§ 1681s-2(a)(2), 1681s-2(b)). "If a consumer notifies a CRA that he disputes the accuracy of an item in his file, [the] FCRA requires the CRA to notify the furnisher of the dispute." *Saunders v. Branch Banking And Tr. Co. Of VA*, 526 F.3d 142, 148 (4th Cir. 2008) (citing 15 U.S.C. § 1681i(a)(2)). Following such notice to the furnisher, the furnisher must "conduct an investigation with respect to the disputed information," "review 'all relevant information provided by the consumer reporting agency' related to the dispute," and "report the results of the investigation to the consumer reporting agency." *Roberts*, 131 F.4th at 246 (quoting 15 U.S.C. § 1681s-2(1)(A), (B), (C)). It also must report to the CRA any finding that the information "is 'incomplete or inaccurate.'" *Id.*

(quoting 15 U.S.C. § 1681s-2(b)(1)(D)). "[I]f part of the information disputed by the consumer is either (1) found to be inaccurate or incomplete, or (2) cannot be verified after the required reasonable investigation, the furnisher must 'modify,' 'delete' or 'permanently block' the reporting of the information." *Id.* (quoting 15 U.S.C. § 1681s-2(b)(1)(E)).

### 1. *Standing Challenge*

Defendant first argues that Plaintiff lacks Article III standing to bring his asserted FCRA claims. (ECF No. 22-1 at pp. 7–9.) The Constitution extends the judicial power of Article III courts to "cases" or "controversies." U.S. CONST. ART. III, § 2, cl. 1. The doctrine of standing, among others, "implements" this limit. *Carney v. Adams*, 592 U.S. 53, 58 (2020). To establish standing:

> First, the plaintiff must have suffered an injury in fact that is both concrete and particularized and actual or imminent, not conjectural or hypothetical. Second, the plaintiff's injury must be fairly traceable to the challenged action of the defendant, meaning that there must be a causal connection between the injury and the conduct complained of. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Dep't. of Educ v. Brown*, 600 U.S. 551, 561 (2023) (citations omitted) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Importantly, Plaintiff bears the burden to establish his standing.[12] *Lujan*, 504 U.S. at 561.

---

[12] Beyond Article III standing, the Supreme Court has also "referred to a plaintiff's need to satisfy 'prudential' or 'statutory' standing requirements." *Bank of Am. Corp. v. City of Miami, Fla.*, 581 U.S. 189, 196–97 (2017) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125–28 and n.4 (2014)). The Supreme Court and the Fourth Circuit have previously noted this terminology can be misleading. *See, e.g.*, *MSP Recovery Claims, Series LLC v. Lundbeck LLC*, 130 F.4th 91, 103 n.5 (4th Cir. 2025), *cert. denied,* 146 S. Ct. 821 (2025); *Lexmark*, 572 U.S. at 128. "To demonstrate statutory standing, . . . plaintiffs must show that they satisfy the statutory requirements of the laws . . . they are invoking." *Mayor of Baltimore v. Actelion Pharms. Ltd.*, 995 F.3d 123, 134 (4th Cir. 2021) (citing *CGM, LLC v. BellSouth Telecomms., Inc.*, 664 F.3d 46, 52 (4th Cir. 2011)). On this requirement: "The question is whether the statute grants the plaintiff the cause of action that he asserts. In answering that question, we presume that a statute ordinarily provides a cause of action 'only to plaintiffs whose interests fall within the zone of interests protected by the law invoked.'" *Bank of Am. Corp.*, 581 U.S. at 196–97 (quoting *Lexmark*, 572 U.S. at 129); *see Alston v. Freedom Plus/Cross River*, No. CV TDC-17-0033, 2018 WL 770384, at *3 (D. Md. Feb. 7, 2018) ("Beyond the requirements of Article III, to have standing to assert a statutory cause of action, plaintiffs must also show that

With regard to the injury in fact element, "[o]nly those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021) (emphasis in original). "'Concrete' is not, however, necessarily synonymous with 'tangible.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016), *as revised* (May 24, 2016). "*Spokeo* sets forth two considerations—historical practice and congressional judgment—that are 'instructive' for determining whether an intangible harm constitutes a concrete injury." *Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244, 253 (4th Cir. 2020) (citing *Spokeo*, 578 U.S. at 340). Thus, in considering whether Plaintiff has met the concrete harm requirement (*i.e.*, injury in fact), the court assesses "whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts," while affording "due respect to Congress's decision to impose a statutory prohibition or obligation on a defendant, and to grant a plaintiff a cause of action to sue over the defendant's violation of that statutory prohibition or obligation." *TransUnion*, 594 U.S. at 424–25 (quoting *Spokeo*, 578 U.S. at 341). Importantly, however, "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo*, 578 U.S. at 341. A plaintiff may

---

they fall within "the zone of interests protected by the law invoked.") (quoting *Lexmark*, 572 U.S. at 129). While Defendant references that Plaintiff's asserted interest must fall within the FCRA's zone of interest, *see* ECF No. 22-1 at p. 7, its arguments otherwise focus solely on the injury in fact requirement of Article III standing, including consideration of whether "defendant's statutory violation is the type of harm Congress sought to prevent when it enacted the statute," which is discussed in the context of Article III standing analysis. *See Curtis v. Propel Prop. Tax Funding, LLC*, 915 F.3d 234, 240–41 (4th Cir. 2019) (citation omitted). The court thus understands Defendant's challenge to be to Plaintiff's Article III standing. While a challenge to a plaintiff's Article III standing concerns this court's jurisdiction, *see Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 343 (4th Cir. 2017), a challenge to statutory standing does not, *see Lexmark*, 572 U.S. at 128 n.4, and "is effectively the same as a dismissal for failure to state a claim," *see Mayor of Baltimore v. Actelion Pharms. Ltd.*, 995 F.3d 123, 134 (4th Cir. 2021) (quoting *CGM, LLC v. BellSouth Telecomms., Inc.*, 664 F.3d 46, 52 (4th Cir. 2011)).

therefore not "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.*

Turning to the facts alleged here, Plaintiff fails to show an injury in fact caused by Defendant's challenged conduct to support his standing to bring his FCRA claim. While damage to his credit score, difficulty opening banking accounts and obtaining credit, and reputational damage may well constitute concrete injuries, Plaintiff fails to allege facts to show the connection between these purported harms and the challenged conduct. Specifically, Plaintiff fails to allege facts to support a reasonable inference that the specific inaccuracies at issue—(i) that his account was marked as paid on time through April 2022 instead of December 2021, and (ii) that the charge off was noted as occurring in May 2022 instead of earlier—resulted in his asserted harm.

Failure to allege facts to support a link between the challenged inaccuracies under the FCRA and the asserted injury is fatal to Plaintiff's standing to bring his FCRA claim. As the Honorable James K. Bredar of this court aptly explained:

> Although misreporting debt may violate the FCRA, Arriaza fails to show that this particular inaccuracy caused her "concrete harm or risk of real ham." *Holland*, 781 F. App'x at 213. Essentially, her argument is that Experian was required to increase her past-due balance to equal the amount "charged off" on the account—in other words, to report that she had *more* delinquent debt. Although Arriaza contends that underreporting her debt somehow *negatively* impacts her credit score, this allegation is "conclusory [and] devoid of any reference to actual events," and need not be credited, even at this stage in the proceedings. *Miller v. Md. Dep't of Nat. Res.*, 813 F. App'x 869, 874 (4th Cir. 2020). Other courts faced with this exact argument have rejected it as "peculiar," rightly concluding that "[i]t [is] simply implausible to think that a denial of credit was less likely to occur if creditors learned that the plaintiff had a higher past due balance." *Cohen v. Experian Info. Sols., Inc.*, Civ. No. BMC-20-3678, 2021 WL 413494, at *2 (E.D.N.Y. Feb. 5, 2021) (quoting *Artemov*, 2020 WL 5211068, at *5). Here, as in those cases, the pleadings fail to push this theory of harm "across the line from conceivable to plausible." *Nemet Chevrolet, Ltd. v.*

*Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009).

*Arriaza v. Experian Info. Sols., Inc.*, No. CV 20-3073, 2021 WL 1019937, at *3 (D. Md. Mar. 17, 2021); *see also Poindexter v. Equifax Info. Servs., LLC*, No. 6:25-CV-00043, 2026 WL 1181801, at *3 (W.D. Va. Apr. 30, 2026) ("[I]t is difficult to see how a consumer is injured by a CRA failing to report a tradeline altogether or by reporting that an account has been paid. Under these circumstances, an inference of injury is unwarranted."). This reasoning is persuasive here. Plaintiff's allegations fail to plausibly assert or support a reasonable inference that the inaccurate and contradictory reporting resulted in the harm of which he complains; in so failing, he fails to assert a plausible theory of harm.

The Fourth Circuit has held that a plaintiff may establish a concrete injury by showing "defendant's statutory violation is the type of harm Congress sought to prevent when it enacted the statute."[13]  *Curtis v. Propel Prop. Tax Funding, LLC*, 915 F.3d 234, 240–41 (4th Cir. 2019) (citation omitted).  Some "district courts have read *Curtis* as potentially supporting the view that, 'in certain circumstances, a statutory violation that reaches the very purpose of the statute may constitute a substantive violation rather than a procedural violation.'" *Arriaza v. Experian Info. Sols., Inc.*, No. CV 20-3073, 2021 WL 1019937, at *4 (D. Md. Mar. 17, 2021) (quoting *Taylor v. Timepayment Corp.*, Civ. No. MHL-18-0378, 2019 WL 1449622, at *7 (E.D. Va. Mar. 31, 2019)). Plaintiff does not appear to advance this theory; however, the court considers it in view of his *pro se* status.  "In enacting the FCRA, Congress did not intend to preclude all inaccuracies in credit reporting, but only those inaccuracies that are either 'patently incorrect' or 'misleading in such a way and to such an extent that [they] can be expected' to adversely affect credit decisions." *Id.* (quoting *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001)).  Again,

---

[13] *Curtis* predates the Supreme Court's *TransUnion* decision and its "emphasis on the traditional, common-law harm analysis." *Pruitt v. Resurgent Cap. Servs., LP*, 610 F. Supp. 3d 775, 784 (D. Md. 2022).

where Plaintiff fails to allege facts that support a plausible claim that the challenged inaccuracies adversely affected his credit and the like, as he asserts, Plaintiff likewise fails to allege harm that reaches the purpose of the FCRA.

The sole remaining assertions of injury concern Plaintiff's "[e]motional distress, anxiety, and mental anguish from dealing with these issues" and "lost time and effort" spend disputing the inaccurate information. (ECF No. 20 ¶ 76.) "Mere boilerplate claims with no detail do not suffice to satisfy the requirements for injury-in-fact." *Reimer v. LexisNexis Risk Sols., Inc.*, No. 3:22CV153(DJN), 2022 WL 4227231, at *8 (E.D. Va. Sept. 13, 2022). General allegations that a plaintiff "felt 'greatly distressed,' 'very concerned,' and suffered 'emotional distress and mental anguish,'" without "specific facts to demonstrate these feelings" are insufficient to confer standing. *Reimer*, 2022 WL 4227231, at *8 (citing cases). Similarly, a bare allegation of lost time is insufficient to support a showing of concrete harm for standing purposes. *Ackerman v. Maximus Educ., LLC*, No. 1:24-CV-00975-MSN-WBP, 2025 WL 51476, at *4–5 (E.D. Va. Jan. 8, 2025), *appeal dismissed,* No. 25-1118, 2025 WL 2237445 (4th Cir. May 13, 2025) (noting that "bare allegation of lost time alone fails to support a finding of concrete harm for standing purposes") (citation omitted); *see Reimer*, 2022 WL 4227231, at *9 (discussing plaintiff's "barefaced allegation" that he "lost a significant amount of time"). Plaintiff's threadbare allegations are thus insufficient to support standing to bring his FCRA claim. *See, e.g.*, *Alston v. Experian Info. Sols., Inc.*, No. CV PJM 15-3558, 2016 WL 4555056, at *7 (D. Md. Aug. 31, 2016) (referring to allegation that defendants' action "caused the Plaintiff to suffer damages including out-of-pocket costs, loss of time, frustration, anger and other emotional or mental stress" as the "barest of the bare bones allegations").

The court will therefore grant the Motion to Dismiss to the extent it seeks dismissal of Plaintiff's FCRA claims for lack of Article III standing.[14], [15]

### 2.  FCRA Claims Under 15 U.S.C. § 1681s-2(a)

Even absent the standing issues discussed above, Plaintiff's FCRA claim arising under 15 U.S.C. § 1681s-2(a) otherwise fails as a matter of law.  (ECF No. 22-1 at p. 5.)  As Defendant avers, the "FCRA explicitly bars private suits for violations of § 1681s–2(a)," allowing consumers instead to "bring private suits for violations of § 1681s–2(b)."  *Saunders v. Branch Banking And Tr. Co. Of VA*, 526 F.3d 142, 149 (4th Cir. 2008).  Thus, a plaintiff's claim that a defendant violated § 1681s-2(a) "fails because that provision has no private right of action," as "[v]iolations of § 1681s–2(a) are 'enforced exclusively . . . by the Federal agencies and officials and the State officials identified in section 1681s[.]'"  *McMillan v. Templin*, No. CV JKB-22-1675, 2023 WL 3996477, at *10 (D. Md. June 14, 2023), *dismissed,* No. 23-1669, 2023 WL 9022679 (4th Cir. Aug. 21, 2023) (quoting 15 U.S.C. § 1681s–2(d)); *see Harper v. Trans Union, LLC*, No. CV DKC 24-230, 2025 WL 1928021, at *4 (D. Md. July 14, 2025) (same); *Tolson v. Democracy Fed. Credit Union*, No. 8:19-CV-01800-PX, 2020 WL 406939, at *2 (D. Md. Jan. 24, 2020) (same).  Plaintiff seemingly concedes this argument by failing to respond and instead asserts he "does not seek relief under § 1681s-2(a)."  (ECF No. 23 at p. 4.)  Based on the foregoing, the court will grant the Motion

---

[14] Defendant confines its Article III standing challenge to Plaintiff's FCRA claims.  (ECF No. 22-1 at pp. 7–9.)  This perhaps is due to Defendant's intention to assert a statutory standing challenge (despite its failure to do so).  Regardless, the Article III standing analysis above is jurisdictional in nature and would appear also to raise questions of Plaintiff's standing to bring his defamation claim and certain theories apparently underpinning his negligence and MCPA claims.  In view of Plaintiff's *pro se* status, and his seeming intention to seek leave to amend his pleading, the court will allow him to proceed in his request, and the court will then take up any jurisdiction challenge, if any, Defendant may raise in opposition to same.

[15] Because the court concludes Plaintiff lacks standing, it declines to reach the remainder of Defendant's arguments as to his FCRA claims based on 15 U.S.C. § 1681s-2(b).  That notwithstanding, it bears mention that Plaintiff alleges multiple facts to support his theory that Defendant had notice of his disputes.  It is clear Defendant disputes same; such a factual dispute is not, however, appropriate for resolution on a Rule 12(b)(6) motion.

to Dismiss to extent it seeks dismissal of Plaintiff's claims under § 1681s-2(a) because such claims fail as a matter of law, and Plaintiff acknowledges he cannot seek relief via this provision.

### B. Maryland State Law Claims[16]

Defendant next seeks dismissal of Plaintiff's state law claims, arguing that Plaintiff's claims (in whole or in part) are preempted by the FCRA, that Plaintiff's claims are barred (in whole or in part) by the applicable statutes of limitation, and that Plaintiff's claims fail to satisfy the necessary pleading requirements. (ECF No. 22-1 at pp. 13–18.)

### 1. *Preemption Challenges*

Defendant argues that each of Plaintiff's state law claims is, at least in part, preempted by the FCRA. (ECF No. 22-1 at pp. 13–17.) "The Supremacy Clause provides a clear rule that federal law 'shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any state to the Contrary notwithstanding.'" *Arizona v. United States*, 567 U.S. 387, 399 (2012) (quoting U.S. CONST. ART. VI, CL. 2.). Pursuant to this principle, "Congress has the power to preempt state law." *Id.* "Where 'Congress has clearly expressed an intention to [preempt state law],' then the state claim cannot proceed alongside the federal statutory claim."[17] *Brown v. Credit One Bank, N.A.*, No. 23-CV-2512-PX, 2024 WL 3993194, at *3 (D. Md. Aug. 28, 2024) (quoting *H & R Block E. Enters., Inc. v. Raskin*, 591 F.3d 718, 723 n.9 (4th Cir. 2010)).

---

[16] "When choosing the applicable state substantive law while exercising diversity or supplemental jurisdiction, a federal district court applies the choice of law rules of the forum state." *State Auto. Mut. Ins. Co. v. Lennox*, 422 F. Supp. 3d 948, 961 (D. Md. 2019) (quoting *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 696 (D. Md. 2011)). Relevant here, Maryland courts ordinarily apply the law of the place where the tort occurred under the doctrine of *lex loci delicti*. *Sherrod v. Achir*, 149 Md. App. 640, 647 (2003). There is no dispute here that the alleged harm occurred in Maryland.

[17] This is referred to as "express preemption." *See N. Virginia Hemp & Agric., LLC v. Virginia*, 125 F.4th 472, 492 (4th Cir. 2025) (identifying that the "presumption against preemption can be overcome in one of three ways," including by "express preemption") (citation omitted).

At issue here, the FCRA contains two preemption provisions: § 1681t(b) and § 1681h(e). *White v. Trans Union LLC*, No. 1:24-CV-324 (RDA/LRV), 2025 WL 409660, at *3–4 (E.D. Va. Feb. 5, 2025); *Nichols v. Synchrony Bank*, No. 7:22-CV-00565, 2023 WL 2474216, at *3 (W.D. Va. Mar. 13, 2023). Section 1681t(b) provides in relevant part: "No requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies." 15 U.S.C. § 1681t(b)(1)(F). For its part, Section 1681h(e) prohibits consumers from bringing an action "in the nature of defamation . . . or negligence with respect to the reporting of information against . . . any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title," "except as to false information furnished with malice or willful intent to injure such consumer." *Id.* § 1681h(e).

On the tension between the two provisions, the Honorable Ellen L. Hollander has provided a helpful guide:

> District courts have struggled to reconcile the apparent breadth of § 1681t(b)(1)(F) with the explicit allowance for certain State law tort claims in § 1681 h(e). *See Gorman v. Wolpoff & Abramson, LLP,* 584 F.3d 1147, 1166 (9th Cir. 2009) (noting conflict among district courts). Indeed, "[o]n its face, the broad preemption of Section 1681t appears to conflict with the malice-exception in Section 1681h(3)." *White v. Green Tree Servicing, LLC*, 118 F. Supp. 3d 867, 872 (D. Md. 2015). Accordingly, "[t]o reconcile these provisions, district courts, including [in the District of Maryland], have adopted the 'statutory approach,' which applies Section 1681t for state statutory claims, and applies Section 1681h for state common law claims." *Id.* (citing *Jacobs v. Seterus, Inc.* ELH-13-2578, 2013 WL 4852243, at *4 (D. Md. Sept. 9, 2013) *and Davenport v. Sallie Mae, Inc.*, PJM-12-1475, 2013 WL 4010983, at *5 (D. Md. Aug. 2, 2013)); *see also Meaney v. Nationstar Mortg.*, TDC-16-2959, 2018 WL 1014927, at *13 (D. Md. Feb. 21, 2018); *Magruder v. Educ. Sys. Fed. Credit Union*, 194 F. Supp. 3d 386, 389-91 (D. Md. 2016); *Beuster v. Equifax Info. Servs.,* 435

20

> F.Supp.2d 471, 478 (D. Md. 2006). In other words, under the statutory approach "state statutory claims arising from reporting inaccurate information to credit reporting agencies are 'squarely preempted by the plain language of the FCRA'" *White*, 118 F. Supp. 3d at 872 (quoting *Ross*, 625 F.3d at 813).

*Richards v. New Rez, LLC*, No. CV ELH-20-1282, 2022 WL 657568, at *23 (D. Md. Mar. 4, 2022); *see also Nichols v. Synchrony Bank*, No. 7:22-CV-00565, 2023 WL 2474216, at *4 (W.D. Va. Mar. 13, 2023) (recognizing that "[a]lthough the Fourth Circuit has not conclusively ruled on this apparent preemption conflict, . . . nearly every district court in the Fourth Circuit . . . has reconciled the conflict between these two preemption provisions by adopting the 'statutory approach'—holding that § 1681t(b)(1)(F) only applies to state statutory claims and that § 1681h(e) only addresses state common law claims'") (citations omitted); *Hall v. Aberdeen Proving Ground Fed. Credit Union*, No. CV JKB-24-1909, 2024 WL 4771376, at *2 (D. Md. Nov. 13, 2024) (discussing same).

Employing the statutory approach discussed above, the court considers whether Plaintiff's MCPA claim is preempted in part by the FCRA pursuant to § 1681t and whether Plaintiff's defamation and negligence claims (his state common claims) are preempted in part by the FCRA pursuant to § 1681h.[18] *See Richards*, 2022 WL 657568, at *23, *supra* (quoting *White v. Green Tree Servicing, LLC*, 118 F. Supp. 3d 867, 872 (D. Md. 2015)).

a.  MCPA Claim

By way of background "[t]he MCPA prohibits any 'unfair, abusive, or deceptive trade practice' in the marketing and sale of consumer goods." *Bowers v. Legum & Norman Realty, Inc.*, 776 F. Supp. 3d 294, 309 (D. Md. 2025) (quoting MD. CODE ANN., COM. LAW § 13-303). Plaintiff's MCPA claim is based, in part, on Defendant alleged reporting of inaccurate information

---

[18] To the extent Plaintiff's state law claims rest on allegations other than Defendant's furnishing of inaccurate information to CRAs, the court analyzes such claims separately.

to CRAs.   "[S]tate statutory claims arising from reporting inaccurate information to credit reporting agencies are 'squarely preempted by the plain language of the FCRA.'"  *White*, 118 F. Supp. 3d at 872 (quoting *Ross*, 625 F.3d at 813); *Richards*, 2022 WL 657568, at \*23 (same).  To the extent Plaintiff's MCPA claim is based on allegations that Defendant reported inaccurate and contradictory information to CRAs—the same allegations that underlie his FCRA claims—the claims plainly "run 'into the teeth of the FCRA preemption provision.'"  *White*, 118 F. Supp. 3d at 872.  *See also, e.g.*, *Queen v. LVNV Funding, LLC*, No. 8:24-CV-02237-LKG, 2025 WL 2532710, at \*5 (D. Md. Sept. 3, 2025) (same); *Brown*, 2024 WL 3993194, at \*3 (same); *Richards*, 2022 WL 657568, at \*23 (same); *Magruder v. Educ. Sys. Fed. Credit Union*, 194 F. Supp. 3d 386, 391 (D. Md. 2016) (same).   The court will therefore grant Defendant's Motion to Dismiss to the extent it seeks dismissal of Plaintiff's MCPA on this basis.

b.   Defamation and Negligence Claims

As discussed above, § 1681h(e), which specifically discusses claims "in the nature of defamation . . . or negligence," *see* 15 U.S.C. § 1681h(e), "applies . . . for state common law claims."  *White*, 118 F. Supp. 3d at 872.  By its very language, § 1681h(e) "clearly appears to exempt certain state law tort claims—those alleging falsity and malice—from the preemptive reach of the FCRA."  *Richards*, 2022 WL 657568, at \*23.  Indeed, § 1681h(e) limits the scope of preemption where the false information is plausibly alleged to have been "furnished with malice or willful intent to injure such consumer."  15 U.S.C. § 1681h(e).  "The FCRA thus preempts defamation unless the complaint makes plausible that the defendant defamed plaintiff with a willful intent to injure or with malice."  *Brown*, 2024 WL 3993194, at \*3 (quoting *Richards*, 2022 WL 657568, at \*22–23).

"[E]stablishing willfulness requires showing that a defendant 'knowingly and intentionally committed an act in conscious disregard for the rights of others.'" *Magruder*, 194 F. Supp. 3d at 391 (quoting *Beuster v. Equifax Info. Servs.*, 435 F. Supp. 2d 471, 479 (D. Md. 2006)); *see Queen*, 2025 WL 2532710, at *11 (same); *Brown*, 2024 WL 3993194, at *3 (same). Additionally, with regard to malice, "Plaintiff must allege that a defendant published material while entertaining serious doubts as to the truth of the publication or with a high degree of awareness of probable falsity," *see Beuster*, 435 F. Supp. 2d at 480 (citing *Foretich v. Cap. Cities/ABC, Inc.*, 37 F.3d 1541, 1551 n.8 (4th Cir. 1994)), or "while actually knowing it to be false," *see id.* at 481 n.18 (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964)). *See Queen*, 2025 WL 2532710, at *11 (same); *Brown*, 2024 WL 3993194, at *3 (same); *Magruder*, 194 F. Supp. 3d at 391 (same). And, of course, pursuant to Federal Rule of Civil Procedure 9(b), "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b).

Plaintiff here contends that Defendant acted willfully in furnishing inaccurate and contradictory information to CRAs and failing to correct or conduct adequate investigation into disputes. (ECF No. 20 ¶¶ 73–75.) In support, Plaintiff alleges that the inaccurate information was contradicted by Defendant's own records, that Defendant repeatedly ignored his disputes and failed to conduct reasonable investigations into same, and that Defendant reinserted inaccurate information after the CRAs had previously deleted it. *Id.* While not necessarily robust, the court is satisfied these allegations are sufficient to plausibly allege that Defendant reported inaccurate and contradictory information knowingly and intentionally or "while entertaining serious doubts as to the truth of the publication or with a high degree of awareness of probable falsity." *See Beuster*, 435 F. Supp. 2d at 479–80, *supra*. *See also Brown*, 2024 WL 3993194, at *3 (finding defamation allegations sufficient to avoid preemption where they alleged defendant reported false

23

credit information to CRAs every month even though it knew it contained false information). The court will therefore deny the Motion to Dismiss on that basis.

### 2. *Statute of Limitations Challenges*

Defendant also seeks dismissal of Plaintiff's Maryland law claims (at least in part) as untimely. Although "the defense of limitations is ordinarily not considered in the context of a motion to dismiss," a court "may dismiss a complaint on statute of limitations grounds 'if the time bar is apparent on the face of the complaint.'" *Ott v. Maryland Dep't of Pub. Safety & Corr. Servs.*, 909 F.3d 655, 658 (4th Cir. 2018) (quoting *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005)). Plaintiff's MCPA and negligence claims are subject to a three-year statute of limitations, *see* MD. CODE ANN., CTS. & JUD. PROC. § 5-101 ("A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced."); *Master Fin., Inc. v. Crowder*, 409 Md. 51, 65 (2009) (MCPA); *Jones v. Smith*, 265 Md. App. 248, 254 (2025) (negligence); and his defamation claim is subject to a one-year statute of limitations, with the claim generally accruing when the defamatory statement is published. MD. CODE ANN., CTS. & JUD. PROC. § 5-105; *Johnson v. MV Transp. Inc.*, 716 F. Supp. 2d. 410, 413–14 (D. Md. 2010).

"In Maryland, [courts] apply the 'discovery rule' in civil actions in determining when the statute of limitations begins to accrue on a claim." *Cain v. Midland Funding, LLC*, 475 Md. 4, 35 (2021) (citing *Poffenberger v. Risser*, 290 Md. 631 (1981)); *see Schaechter v. Nadel*, No. 483, Sept.term,2016, 2017 WL 5256323, at *7 (Md. Ct. Spec. App. Nov. 13, 2017) (regarding negligence claims); *Ayres v. Ocwen Loan Servicing, LLC*, 129 F. Supp. 3d 249, 272 (D. Md. 2015) (regarding MCPA claims); *McClure v. Lovelace*, 214 Md. App. 716, 742 (2013), *aff'd sub nom. Amalgamated Transit Union v. Lovelace*, 441 Md. 560 (2015) (regarding defamation claims).

24

"The discovery rule protects plaintiffs in a position 'where it was not reasonably possible to have obtained notice of the nature and cause of an injury . . . .'" *Poole v. Coakley & Williams Const., Inc.*, 423 Md. 91, 132 (2011)) (quoting *Frederick Rd. Ltd. P'ship v. Brown & Sturm*, 360 Md. 76, 956 (2000)). It provides that "a claim accrues when the plaintiff '*knew or reasonably should have known* of the wrong.'" *Caruso Builder Belle Oak, LLC v. Sullivan*, 489 Md. 346, 364 (2025) (emphasis in original) (quoting *Cain*, 475 Md. at 35). Simply put, under the discovery rule, "limitations begin to run when a claimant gains knowledge sufficient to put [him] on inquiry." *Id.* (quoting *Lumsden v. Design Tech Builders, Inc.*, 358 Md. 435, 445 (2000)).

a.   Timeliness of the MCPA Claim Based on the Citibank Check Allegations

Because Plaintiff's MCPA claim based on Defendant's allegedly inaccurate and contradictory reporting to CRAs is preempted by the FCRA, his MCPA claim rests entirely on the allegation that Defendant misrepresented the status of his Citibank check and failed to disclose the risk of garnishment. (ECF No. 20 ¶ 115.) Defendant argues this claim is time-barred by the three-year statute of limitations. (ECF No. 22-1 at pp. 17.) The court agrees. Plaintiff's allegations on this point are clear: Shortly after depositing the Citibank check on or about October 25, 2021, Defendant's representative confirmed to him the check had cleared, but "[a]pproximately one week later, APGFCU reversed its position, stating that the check had not cleared at all." (ECF No. 20 ¶¶ 8–12.) Plaintiff obviously knew of this flip-flopping and thus conducted his own contemporaneous investigation. *Id.* ¶¶ 12–13. Plaintiff initiated his MCPA claim based on these allegations more than three years later, on August 15, 2025. It is therefore time-barred by operation of the three-year statute of limitations.[19] Plaintiff offers no opposition to this argument, conceding the point. *See Stenlund v. Marriott Int'l, Inc.*, 172 F. Supp. 3d 874, 887 (D. Md. 2016) (noting that

_____

[19] Plaintiff does not argue, nor does the court discern, any factual basis upon which this limitation period may have been tolled based on the facts alleged.

"[i]n failing to respond to [defendant's] argument," the plaintiff "concedes the point"); *Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010) (explaining that a plaintiff "abandon[s]" her claim where she fails to respond to argument).[20]  Defendant's Motion to Dismiss will be granted on that basis.  Together with the court's analysis on preemption, Plaintiff's MCPA claim will be dismissed.

b.  Timeliness of the Defamation Claim

Plaintiff's defamation claim is focused entirely on Defendant furnishing allegedly inaccurate and contradictory information to the CRAs.   (ECF No. 20 ¶¶ 102–107.)  Defendant contends that because Plaintiff discovered the allegedly defamatory information on his credit reports in July 2022, his claim is time-barred.  (ECF No. 22-1 at pp. 13–14.)  Defendant's argument, however, neglects material allegations in Plaintiff's Amended Complaint.  Plaintiff alleges that he "became aware of credit damage on or about July 25, 2022," but it is unclear whether he reviewed his credit reports on that date or some date thereafter; his allegations otherwise reflect that he did not obtain his credit report showing the allegedly inaccurate information until August 2024.  (ECF No. 20 ¶¶ 16, 26–29.)  Plaintiff also alleges, and Defendant entirely disregards, that Defendant repeatedly furnished this allegedly defamatory information periodically thereafter, including on July 31, 2024, November 30, 2024, April 30, 2025, and December 31, 2025.  *Id.* ¶¶ 27–29, 47, 60.  Defendant's argument is not compelling, especially where it is not "apparent on the face of the [Amended Complaint]" that Plaintiff's defamation claim is entirely time-barred.  *See Ott*, 909 F.3d at 658, *supra*.  The court will therefore deny the Motion to Dismiss on this basis.

---

[20] Plaintiff's response in opposition only addresses the timeliness of his FCRA claim.  (ECF No. 23 at p. 4.)

c.   Timeliness of the Negligence Claim

Finally, Plaintiff's negligence claim, like his MCPA claim, targets two general courses of conduct—first, Defendant's purported breach of its duty of care in its handling of the Citibank check; and second, Defendant's allegedly inaccurate and contradictory reporting to CRAs and failure to adequately investigate and make corrections.  (ECF No. 20 ¶¶ 110–13.)  Defendant argues that any purported negligence based on its handling of the Citibank check is time-barred by the three-year statute of limitations.  (ECF No. 22-1 at pp. 15–16.)  For the same reasons set forth above as to Plaintiff's MCPA claim, the court agrees.  Plaintiff knew of Defendant's conduct with regard to the Citibank check shortly after it occurred in or around October 2021.  He initiated this action more than three years later; therefore, the claim is time-barred.  Again, Plaintiff offers no opposition to this argument, conceding the point.  *See Stenlund*, 172 F. Supp. 3d at 887 and *Ferdinand-Davenport*, 742 F. Supp. 2d at 777, *supra*.  Accordingly, to the extent Plaintiff's negligence claim is based on Defendant's handling of the Citibank check, the claim will be dismissed.  Defendant's Motion to Dismiss will be granted on that basis.

### 3.   *Pleading Sufficiency Challenges*

Finally, Defendant argues Plaintiff's defamation and negligence allegations fail to state claims.  Against the backdrop of the court's conclusions set forth above, the court considers the sufficiency of Plaintiff's defamation claim, which is based solely on Defendant's alleged furnishing of inaccurate and contradictory information to CRAs, as well as Plaintiff's negligence claim to the extent it is based on the same allegations.

d.   Defamation

By way of background, to plead a claim of defamation in Maryland, a plaintiff is required to allege: "(1) that the defendant made a defamatory statement to a third person, (2) that the

statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered harm." *Piscatelli v. Van Smith*, 424 Md. 294, 306 (2012) (*quoting Indep. Newspapers, Inc. v. Brodie*, 407 Md. 415, 441 (2009)).  A statement that is defamatory "tends to expose a person to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, or associating with, that person." *Doe v. Johns Hopkins Health Sys. Corp.*, 274 F. Supp. 3d 355, 365 (D. Md. 2017) (quoting *Gohari v. Darvish*, 363 Md. 42, 54 (2001)).

Plaintiff's defamation claims fails for the same reasons discussed above—Plaintiff's allegations fail to plausibly assert that the inaccurate reporting of his account as paid on time and a later charge off date itself tended to "expose [him] to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, or associating with, that person," *see Doe*, 274 F. Supp. 3d at 365, *supra*, and that the harm he alleges resulted from the alleged inaccuracies.  Even accepting his allegations as true, Plaintiff has failed to plead a plausible defamation claim.  The court will grant the Motion on this basis.

e.  Negligence

Plaintiff's negligence claim faces the same deficiency as his defamation claim.  To state a claim of negligence, a plaintiff must allege "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 131–32 (2007) (quoting *Valentine v. On Target*, 353 Md. 544, 549 (1999)).  Even assuming without deciding the existence of a duty, where Plaintiff's allegations fail to support the link between the purported inaccuracies and the harm he

asserts, he again fails to state a plausible claim.  The court will again grant the Motion to Dismiss on that basis.

## V.    <u>**REQUEST TO AMEND**</u>

In his opposition, Plaintiff requests that, in the event the court "identifies any deficiency in Plaintiff's pleading," the court grant him leave to amend.  (ECF No. 23 at p. 5.)  Because Plaintiff did not file a motion for leave to amend accompanied with a proposed amended pleading, the court is unable to discern whether leave to amend should be granted pursuant to Federal Rule of Civil Procedure 15(a).  Nonetheless, cognizant of Plaintiff's *pro se* status, the court will afford Plaintiff an opportunity to move for such leave following adjudication of the instant Motions.  Specifically, while the court will dismiss Plaintiff's Amended Complaint (ECF No. 20), it will grant Plaintiff 14 days to file a motion for leave to file an amended complaint, should he so choose.  The motion for leave must abide the Federal and Local Rules; and Plaintiff should carefully observe the rulings of the court as set forth in this memorandum opinion and accompanying order.[21]

---

[21] Based on the myriad filings in this action, and Plaintiff's stated intention to request additional leave to amend, the court commends to the parties' attention Federal Rule of Civil Procedure 11:

> By presenting to the court a pleading, written motion, or other paper . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

FED. R. CIV. P. 11(b).  Plaintiff has filed numerous motions lacking merit and advancing certain arguments that are patently (and verifiably) wrong (*e.g.*, contending Defendant did not raise arguments in its Motion to Dismiss which it plainly did).  To the extent Plaintiff requests leave to amend, the court reminds the parties that allegations in a complaint shall not be made absent a good faith basis; and discovery is not "a fishing expedition" that can be used to avoid the requirement that a plaintiff "satisfy a plausibility [pleading] standard, *i.e.*, more than possible and less than

## VI.    <u>CONCLUSION</u>

Accordingly, for the reasons set forth herein, by separate order, Defendant's Motion to Dismiss will be granted, Plaintiff's Request to Amend will be denied without prejudice and with leave to refile in accordance with this court's instruction above and in the accompanying order, and Plaintiff's Surreply Motion will be denied.[22, 23]

July 10, 2026                                                  /S/

_____

Julie R. Rubin
United States District Judge

---

probable." *St. Michael's Media, Inc. v. Mayor & City Council of Baltimore*, No. CV ELH-21-2337, 2023 WL 2743361, at *35 (D. Md. Mar. 31, 2023) (quoting *Dudek v. Nassau Cnty. Sheriff's Dep't*, 991 F. Supp. 2d 402, 414 (E.D.N.Y. 2013)).

[22] Notwithstanding Defendant's request, the court declines to dismiss Plaintiff's Complaint with prejudice. *See Adbul-Mumit v. Alexandria Hyundai, LLC*, 896 F.3d 278, 292 (4th Cir. 2018) (stating that "the nature of dismissal" is left to "the sound discretion of the district court"). Moreover, a dismissal for lack of subject matter jurisdiction must be without prejudice. *See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013) ("A dismissal for lack of standing—or any other defect in subject matter jurisdiction—must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits.").

[23] The court declines Defendant's request, attended by no substantive argument, that it award Defendant costs incurred in pursuit and defense of the various Motions.